STATE OF UTAH, on behalf of itself and all others similarly situated,
Plaintiffs,

v.

AMERICAN PIPE AND CONSTRUC-
TION COMPANY, United Concrete Pipe
Corporation, Utah Concrete Pipe Com-
pany, W. R. White Company, United
States Steel Corporation, Kaiser Steel
Corporation, Smith-Scott, Inc., U. S. In-
dustries, Inc., Defendants.

Civ. No. 69–1964–MP.

United States District Court,
C. D. California.

March 30, 1970.

---

Vernon B. Romney, Atty. Gen., State of Utah, Mulliner, Prince & Mangum, Gerald R. Miller, Denis R. Morrill, Neslen & Mock, Salt Lake City, Utah, for plaintiffs.

George W. Jansen, San Diego, Cal., Sullivan, Jones & Mitchell, James O. Sullivan, Wayne M. Pitluck, San Diego, Cal., Rawlings, Roberts & Black, Salt Lake City, Utah, for American Pipe and Construction Co.

Gibson, Dunn & Crutcher, Robert E. Cooper, Los Angeles, Cal., Fabian & Clendenin, Peter W. Billings, Salt Lake City, Utah, for United Concrete Pipe Corp. and Smith-Scott, Inc.

Ryley, Carlock & Ralston, G. Read Carlock, Phoenix, Ariz., Olmstead, Stine & Campbell, Richard W. Campbell, Ogden, Utah, for W. R. White Co.

Dominic B. King, Law Dept., United States Steel Corp., Pittsburgh, Pa., Musick, Peeler & Garrett, Jesse R. O'Malley, Lawrence E. Stickney, Los Angeles, Cal., Parsons, Behle, Evans & Latimer, Calvin A. Behle, Salt Lake City, Utah, for United States Steel Corp.

VanCott, Bagley, Cornwall & McCarthy, Haldor T. Benson, Salt Lake City, Utah, O'Melveny & Myers, Thomas J. Ready, Los Angeles, Cal., for Utah Concrete Pipe Company.

Paul, Hastings, Janofsky & Walker, Oliver F. Green, Jr., Los Angeles, Cal., for U. S. Industries.

Thelen, Marrin, Johnson & Bridges, Gordon Johnson, San Francisco, Cal., Clyde, Mecham & Pratt, Edward W. Clyde, Salt Lake City, Utah, Moyle & Moyle, Hardin A. Whitney, Jr., Salt Lake City, Utah, for Kaiser Steel Corp.

## DECISION ON MOTIONS TO INTERVENE, AMEND, ETC.

PENCE, Chief Judge.

The motions before this court are but sequelae of this court's decision and order of December 17, 1969, 49 F.R.D. 17, that this Sherman 1 antitrust case, filed as a class action by the State of Utah under Rule 23(b) (3), F.R.Civ.P., was not to be so maintained. As indicated in that prior ruling, Utah filed this Sherman 1 antitrust suit on May 13, 1969, just eleven days before the statute of limitations in these "Western Pipe" cases ceased to be tolled under Clayton 5(b) (15 U.S.C. § 16(b)). In those eleven days none of the moving parties now before this court filed any actions or motions, nor did any do so until after this court's December 4, 1969 decision. Now, after solicitation to do so by the State of Utah, some 60-odd towns and cities, and water and sewer districts in Utah (petitioners), through Utah's counsel, have: (1) moved, pursuant to Rule 24(a) (2) or in the alternative to

Rule 24(b) (2), F.R.Civ.P., to intervene as plaintiffs in the Utah action; and as an alternative, (2) Utah has moved for leave to amend its complaint by adding these petitioners as parties-plaintiff; (3) as an alternative to that, Utah has moved that the court alter or amend its order of December 4, 1969, pursuant to Rule 23(c) (1), F.R.Civ.P., so as to reinstate this as a class action as to those same petitioners. (4) As yet another alternative, Utah has moved the court for an order directing that notice be given to all members of the class alleged in plaintiff's original complaint advising them of the decision of the court to terminate the class action and then giving them a reasonable time in which to intervene in the present action. Coupled with this is the supplemental motion that the court's order of December 4 be vacated pending such notice and intervention "within a reasonable time" thereafter. (5) Utah also in the alternative moves that the court amend its prior order by adding "the magic language" from 28 U.S.C. § 1292(b) so as to facilitate an interlocutory appeal from its December 4 decision.

The affidavits of the petitioners indicate that in February of 1969 attorneys for only six or seven thereof had ever discussed with Utah's attorney the possibility of a pipe antitrust suit against the defendants herein, or had relied upon the Utah class action to protect their interests.[1] Each of the petitioners alleges that the alleged conspiracy has continued to the date of the filing of the complaint by the State of Utah. All motions have been fully briefed and argued.

While Utah and petitioners allege that the "Western Pipe" conspiracy has continued on until May 13, 1969, the problem underlying all of the motions is that of the bar of the statute of limitations to the petitioners' complaints. Underlying every motion is the desire of the petitioners to avoid that bar by any procedural route. As determined by this court in Maricopa County v. American Pipe and Construction Co. et al., 303 F. Supp. 77 (D.Ariz.1969), the tolling of the statute of limitations on the government's "Western Pipe" conspiracy cases ceased on May 24, 1969. Since only the State of Utah, of all the parties now before this court, filed its suit prior to that date, unless by one means or another the present parties can somehow get under the now dropped portcullis and inside the golden castle of the Clayton Act, any Sherman 1 claims for any injuries prior to the four years preceding the filing of these motions are barred.[2]

*Motions to Intervene Under Rule 24.*

Each of the petitioners urged that they should be permitted to intervene as

---

1. These include the Metropolitan Water District of Salt Lake City, Salt Lake City, Salt Lake County Sanitary District, Salt Lake City Suburban Sanitary District, Central Weber Sewer Improvement District, City of Ogden, and Bona Vista, claiming that they have purchased some $5 million of pipe from the defendants or others during the period 1946–1964. Discovery in prior pipe litigation indicates that the relevant damage period for the alleged conspiracy was between 1954 and the end of 1962.

2. Anent the above, although petitioners have pled that the conspiracy continued on until May 13, 1969, not even Utah seems to take that portion of its complaint seriously. For all antitrust (money) purposes, the only evidence so far developed in the massive prior litigation involving the same alleged conspiracies indicate with almost absolute certainty that any such conspiracies terminated at least by the end of 1962. Digging into all Sherman 1 claims for the four years immediately prior to May 13, 1969 would, therefore, to an equally almost absolute certainty, produce nothing but a dry and expensive hole for the petitioners, with no monetary recovery whatsoever. (The court here is not prejudging; it is prognosticating.) While the court cannot foreclose the petitioners from the questionable pleasure of digging such a hole, it will here bypass that segment of petitioners' allegations.

a matter of right under Rule 24(a) (2), maintaining that they have such an interest relating to the conspiracy charged in the Utah action that the disposition of that action may impair or impede their ability to protect that interest. They urge the court should adopt the "liberalized" interpretation given this section by Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967); Smuck v. Hobson, 132 U.S.App.D.C. 372, 408 F.2d 175 (1969); and Nuesse v. Camp, 128 U.S.App.D.C. 172, 385 F.2d 694 (1967). While the advisory committee to the 1966 amendment in its note to subdivision (a) stated: "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene * * *.",[3] this court feels that Rule 24(a) (2) has been given its optimum application in *Cascade.* In *Cascade, Smuck* and *Nuesse,* each of the intervenors were attempting to implement important and well-defined public policies—a status not enjoyed by petitioners here.

It is only in those cases where the prospective intervenor appears to have a sufficient stake in the outcome and enough to contribute to the resolution of the controversy, that a right to intervene arises. Utah and petitioners admit that a judgment for or against Utah would in nowise preclude the petitioners or any of them from filing independent actions against the same defendants based upon the same alleged conspiratorial acts as set up by Utah. No decision in Utah's case would be res adjudicata as to any portion of their several causes of action. Thus, not one of the petitioners here has any real stake in the outcome of the Utah case, per se. Nor would their presence contribute to the resolution of Utah's

claims. As indicated above, it is manifest that the underlying reason for the petitions to intervene is the desire of petitioners to get their complaints related back to May 13, 1969, and thereby circumvent the bar of the statute of limitations.

The petitioners here manifestly have no such interest in the outcome of Utah's litigation as would mandate this court to permit them to intervene under Rule 24(a) (2).

The alternative, permissive intervention under Rule 24(b) (2), is not as easy of resolution. Petitioners' claims might well have questions of fact in common with Utah's—apparently the same parties-defendant, same alleged conspiracy, same time-damage periods, etc. It is manifest, however, that to permit even a limited intervention on the part of petitioners for the purpose of conducting joint discovery proceedings would in the context of this case, seriously prejudice the rights of the defendants, and necessarily complicate and delay resolution of discovery problems arising in Utah's case.

The seven petitioners[4] who in their bare bones affidavits indicate some reliance on Utah's class action to toll the statute for them, find some support in dicta in Judge Fullam's excellently written decision in *Philadelphia Electric,*[5] viz., that those members of the non-class who relied upon the class action to protect their interests should be allowed to intervene and their actions relate back to the date the class action was filed, even though, meanwhile, the statute had run. It appears to this court, however, that within the limited context of violations of the antitrust laws, there is a very serious doubt as to the validity of any such holding on intervention in class actions as found in *Philadelphia Electric*

3. 3B Moore's Federal Practice ¶ 24.01 [10].

4. See n. 1.

5. Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452 (E.D. Pa.1968).

or *Nisley* [6] under either Rule 23 or Rule 24. This doubt stems from 28 U.S.C. § 2072, the statute enabling the Supreme Court to make the present Rules of Civil Procedure. "Such rules shall not abridge, enlarge or modify any substantive rights * * *."

The courts that have permitted tolling of the statute by the filing of class actions in antitrust actions have consciously or otherwise entered into an "interest-balancing" approach to the problem.[7] Judge Frank, who in York v. Guaranty Trust Co.[8] said that "to hold that such noteholders [who were justified in believing that the plaintiffs' class action was begun on their behalf] cannot, as to lapse of time, have the benefit, by intervention, of the institution of the suit by plaintiff would be to convert the Rule [Old Rule 23(a) (3)] into a trap", was but balancing off the interests of the parties. This same interest-balancing approach was considered by Judge Friendly in his concurring opinion in Escott v. Barchris Constr. Corp.,[9] in commenting on Judge Frank's "trap" argument in connection with an old spurious class action. The courts which have allowed class actions under the New Rule 23 to toll the statute in antitrust suits, likewise have taken an interest-balancing approach,[10] justifying the

tolling in order to implement the congressional intent that the language of Clayton 5(b) must be given its broadest application in favor of enabling private litigants to reap every benefit that they possibly can in order to encourage the enforcement of antitrust laws by private litigation,[11] and in spite of verbal recognition of the substantive nature of the statute of limitations under §§ 4B and 5(b) [12] nevertheless have determined that when there is a conflict between implementing the Rules and implementing the antitrust statute of limitations policy balancing demands that the antitrust statute of repose must be violently disturbed by continued tolling—tolling solely authorized by judicial interpretation of Rule 23. This court is not satisfied that such interpretation is permissible under 28 U.S.C. § 2072.

In enacting the antitrust laws, Congress created a novel statutory right on behalf of plaintiffs, tortious and penal in nature, but stemming from no common law right, and providing that those injured by violations of these strictly American theory-of-economics statutes may recover treble damages plus cost of suit, and a reasonable attorney's fee. 15 U.S.C. § 15. Moreover, Congress has specially set up a four year statute of limitations for such antitrust actions, §

6. Union Carbide & Carbon Corp. v. Nisley, 300 F.2d 561 (10 Cir. 1961), appeal dismissed sub nom., Wade v. Union Carbide, 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46 (1962).

7. See 13 Villanova L.R. 370, 382.

8. 143 F.2d 503, 529 (2 Cir. 1944).

9. 340 F.2d 731, 735 (2 Cir. 1965).

10. This same approach was also adopted by the majority under the old rule in *Union Carbide*, n. 6, 300 F.2d at 590.

11. *Maricopa, supra*, 303 F.Supp. at 85. *Cf.* also; *Philadelphia Electric*, n. 5, 43 F.R.D. at 460, and State of Minnesota v. United States Steel Corp., 44 F.R.D. 559, 574 (D.C.Minn.1968).

12. *Philadelphia Electric*, n. 5, 43 F.R.D. at 460:

"Surely, it was not the intention of the Committee, the Supreme Court, or the Congress that the 1966 amendments to Rule 23 should have any effect upon the period of limitations established by Congress, 15 U.S.C. §§ 15b, 16(b), as amended. Any such purpose would run counter to the statutory prohibition against rules which 'abridge, enlarge or modify any substantive right', 28 U.S.C. § 2072. The strong presumption of validity of these rules, Hanna v. Plumer, 380 U.S. 460, 461, 471, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), requires this court to apply the rule as written * * *."

4B, and added on to that statute an additional period during which the statute is tolled by the institution of a civil or criminal proceeding by the United States to prevent, restrain or punish violations of any of the antitrust laws. There is even further tolling because the courts have held [13] that as to 15 U.S.C. § 15b, the rule that fraudulent concealment tolls a statute of limitations "is read into every statute of limitations."

In even further encouragement and protection to antitrust plaintiffs, the courts have held that the institution of successive governmental actions under § 5(b), if filed while the statute is still tolled, continues the tolling process beyond the conclusion of prior government actions.[14] Moreover, the statute is not only tolled as to the defendants named in the government's actions, but it is also tolled as to all co-conspirators whether named in the actions or not,[15] and it remains tolled as to *all* conspirators even if some have settled out or otherwise concluded their case with the government.[16] All of these expanding constructions of the statute of limitations have been made within the context of the antitrust acts themselves.

In the instant case, the fraudulent concealment factors allegedly present, coupled with successive governmental actions and delayed settlement of the government suits by only one of the present defendants has carried back the period of defendants' potential liability to at least 1954 and tolled the statute for over six years following the government indictments of March 1964. If "the sole reason for [these tolling provisions] of the Clayton Act was to stimulate private antitrust suits * * * and aid such private suitors",[17] it would appear that this court has completely implemented congressional intent in these "Western Pipe" cases.

The policy behind the federal enactment of an antitrust statute of limitations with an accompanying statute on tolling was declared by Congress as follows:

"This bill makes several important changes in the tolling provisions of existing law. As presently written, section 5 of the Clayton Act tolls the statute of limitations with respect to private treble-damage suits during the pendency of a suit by the United States to punish or restrain violations of the antitrust laws. This period of tolling is continued by the present bill with several modifications.

"There are many instances where the statute of limitations as to a private cause of action may nearly have expired before suit is instituted by the Government under the antitrust laws. Although the statute is tolled during the pendency of the proceedings brought by the United States, the plaintiff in a treble-damage action may find himself hard pressed to reap the benefits of the Government suit if, upon its conclusion, he has but a short time remaining to study the Government's case, estimate his own damages, assess the strength and validity of his suit, and prepare and file his complaint. To alleviate such difficulties, the present bill would extend the tolling period not only for the du-

13. Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Esplin v. Hirschi, 402 F.2d 94, 103 (10 Cir. 1968); Public Service Co. of New Mexico v. General Electric Co., 315 F.2d 306, 311 (10 Cir. 1963).

14. *Maricopa, supra*, 303 F.Supp. at 86.

15. Leh v. General Petroleum Corporation, 382 U.S. 54, 86 S.Ct. 203, 15 L.Ed.2d 134

(1965); New Jersey Wood Finishing Co. v. Minnesota Mining & Mfg. Co., 332 F.2d 346, 354 (3 Cir. 1964), aff'd 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965).

16. *Maricopa, supra*, 303 F.Supp. at 87.

17. *New Jersey Wood Finishing*, n. 15, 332 F.2d at 354.

ration of the Government's antitrust suit, but for 1 year thereafter. *This would guarantee all plaintiffs an adequate period in which to take advantage of Government antitrust proceedings.*

"While the committee believes it important to safeguard the rights of plaintiffs by tolling the statute during the pendency of Government antitrust actions, it recognizes that in many instances the long duration of such proceedings taken in conjunction with a lengthy statute of limitations may tend to prolong stale claims, unduly impair efficient business operations, and overburden the calendars of courts. The committee believes the provision of this bill will *tend to shorten the period* over which private treble-damage actions will extend by requiring that the plaintiff bring his suit within 4 years after it accrued or within 1 year after the Government's case has been concluded.

"While the committee considers it highly desirable to toll the statute of limitations during a Government antitrust action and to grant plaintiff a reasonable time thereafter in which to bring suit, it does not believe that the undue prolongation of proceedings is conducive to effective and efficient enforcement of the antitrust laws. The present bill would assure all plaintiffs of at least 4 years from the time their cause of action accrued in which to institute suit. It would also guarantee every plaintiff at least a year from the close of a Government antitrust suit to prepare his case and file his complaint. But in cases where the plaintiff's action had been suspended by the pendency of a Government antitrust proceeding, he *would be required to bring his action* either (a) within the suspension period, i. e., within 1 year after the Government suit had terminated, or (b) within 4 years after his cause of action accrued." (Emphasis added.)[18]

"*In addition to establishing a uniform statute of limitations, t*he bill strikes at *another* problem flowing therefrom, namely, the tolling of such a statute. At the present time, the tolling of the statute, with respect to private treble damage suits, exists during the pendency of a suit by the United States. This period is continued by the present bill. However, in order that a person might not be deprived of the benefit of the Government suit because of an abrupt termination of the Government's litigation, the bill provides for extension of the tolling period not only for the duration of the Government suit but also for 1 year thereafter. Thus the injured parties are provided with an adequate time in which to take advantage of the Government's antitrust proceedings.

"*There is an added precaution also provided for* in this bill to prevent undue and lengthy prolongation of stale claims. By requiring a plaintiff to institute his suit either within 4 years from the date of injury or within 1 year after the final decree in a Government case, the plaintiffs will not be afforded time to procrastinate and delay." (Emphasis added.)[19]

This court has previously said that when Congress enacted 15 U.S.C. § 16(b) tolling the 4-year statute of limitations of § 4B, it made it "manifest that in encouraging the enforcement of the antitrust laws by private litigation, tolling of the statute was more important than the repose established thereby."[20] That statement may be utilized only

18. S.Rep. No. 619, 6/21/1955 [To accompany H.R. 4954], 2 U.S.Cong. & Admin. News 1955, pp. 2332–2333.

19. 101 Cong.Rec. Part 4, p. 5130, 84th Cong. 1st Sess., Congressman Keating, House Committee on the Judiciary.

20. *Maricopa, supra,* 303 F.Supp. at 85.

within the context of the interpretation of the extent of tolling permitted by 15 U.S.C. § 16(b), not as an inference of the application of Rule 23 to that section.

Any "interest-balancing" approach is inapplicable in this antitrust action if either the statutory bar of § 4B (15 U.S.C. § 15b) or § 5(b) (15 U.S.C. § 16(b)) created a substantive right for antitrust defendants. This problem of rights created by statute, which gives the right of action and also fixes the time within which such action may be brought, was fully considered by Chief Justice Waite in The Harrisburg, 119 U.S. 199, 214, 7 S.Ct. 140, 147, 30 L.Ed. 358 (1886), where, in determining if a suit *in rem* could be brought in admiralty under a state statute permitting recovery of damages for wrongful death on navigable waters which also fixed the time within which such action might be brought, wrote:

> "The statutes create a new legal liability, with the right to a suit for its enforcement, provided the suit is brought within 12 months, and not otherwise. The time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is a condition attached to the right to sue at all. * * * Time has been made of the essence of the right, and the right is lost if the time is disregarded. The liability and the remedy are created by the same statutes, and the limitations of the remedy are therefore to be treated as limitations of the right."

This same rule was invoked in Ragan v. Merchants Transfer Co., 337 U.S. 530, 533, 69 S.Ct. 1233, 1235, 93 L.Ed. 1520 (1949), where Justice Douglas said of a state law and its statute of limitations vis-a-vis Rules 3 and 4:

> "Since that cause of action is created by local law, the measure of it is to be

found only in local law. * * * It accrues and comes to an end when local law so declares. * * *

"We can draw no distinction in this case because local law brought the cause of action to an end after, rather than before, suit was started in the federal court. In both cases local law created the right which the federal court was asked to enforce. In both cases local law undertook to determine the life of the cause of action. We cannot give it longer life in the federal court than it would have had in the state court without adding something to the cause of action. * * *

"It is argued that the Kansas statute in question is not an integral part of the Kansas statute of limitations. But the Court of Appeals * * * has held to the contrary." (Footnote omitted.)[21]

Judge Learned Hand in Bomar v. Keyes, 162 F.2d 136, 138, 140 (2 Cir. 1947), in also considering the statute of limitations in relation to Rules 3 and 4, covered the obverse:

> "We [here] have not to deal with a case in which the limitation is annexed as a condition to the very right of action created. * * * and when a right is not so conditioned the statute of limitations is treated as going to the remedy."

If the analyses of Justices Waite and Douglas and Judge Learned Hand on the bar of limitations in the context of rights created by statute are valid, then within the purview of the § 5(b) at least, any enlargement of tolling of that statute by virtue of the Rules cannot rationally be categorized as procedural!

The substantive-procedural dichotomy does not present a completely new problem. It has been considered by other courts but in connection with the effect of the doctrine of fraudulent concealment on § 4B. *E. g.*, Kansas City, Mis-

---

21. This court does not view Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), as disturbing the above statement of applicable law.

souri v. Federal Pacific Electric Co., 310 F.2d 271, 282 (8 Cir. 1962); Atlantic City Electric Co. v. General Electric Co., 312 F.2d 236 (2 Cir. 1962); Public Service Co. of New Mexico, *supra*, n. 13. Each court held that Holmberg, *supra*, 327 U.S. at 397, 66 S.Ct. at 585, 90 L. Ed. 743, reads the principle that fraudulent concealment of a cause of action tolls a statute of limitations "into every federal statute of limitation", and since Congress did not provide to the contrary by unambiguous language, the rule applied to § 4B.[22] This rule appears now to be too well settled for dispute.[23]

*Tolling of §§ 4B and 5(b) and the Enabling Acts*

By judicial equitable fiat, § 4B is tolled by fraudulent concealment. By the legislative ukase of § 5(b), it is further tolled by government suit. In the context of the facts of this case, plaintiff would have the tolling period specified by § 5(b) additionally tolled by virtue of the Rules of Civil Procedure.

The Enabling Acts (28 U.S.C. §§ 2072, 2074, civil and bankruptcy rules; and 18 U.S.C. § 3771, criminal rules) confer rule-making power to the Court only over procedure and not substance. The test, as stated in Sibbach v. Wilson & Co., 312 U.S. 1, 14, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1940), is "whether a rule really regulates procedure, * * * the judicial process for enforcing rights or duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of

them." If Congress had but enacted § 4B to take the place of the hodge-podge of state statutes of limitation and omitted § 5(b), the substantive-procedural rationale of *Kansas City, Missouri* would have more validity. When, however, with no state statutes or common law precedent before it, Congress in § 5(b) created new and specific tolling conditions and periods, and unequivocally *"Provided, however"*, that when the statute of limitations was suspended thereunder, "any action * * * shall be forever barred unless commenced either [within the period of suspension or] within four years after the cause of action accrued", the validity of comparing state-federal statutes of limitation [24] within the milieu of substantive-procedural rights becomes questionable. In § 5(b) Congress not only created new rights for antitrust plaintiffs but also clearly created obverse rights for antitrust defendants.

It is not necessary for this court to determine whether or not the doctrine in *York, Hanna* and *Sibbach, supra,* would here control. From its legislative history this court can only conclude that in enacting §§ 4B and 5(b) together with a unique tolling statute, Congress enmeshed into the Clayton Act its own statute of limitations applicable only to equally unique antitrust causes of action and calculated to give what Congress said was sufficient time for any aggrieved parties to discover violations, gain all the benefits they could from federal actions thereon, and file their

22. This court has not ignored the carefully prepared and documented opinion of Judge Mathes in the *Kansas City, Missouri* case. As indicated above, the problem presented to that court, however, was not within the context of enlarging the antitrust tolling period of § 5(b) by virtue of the Federal Rules of Civil Procedure, but rather an enlargement of § 4B by virtue of equitable doctrine against fraudulent concealment. This court, however, finds the *entire* Congressmen Murray-Quigley discourse concluding without anything genuinely definitive having

been *agreed* upon. This court, like Judge Moore in *Atlantic City Electric Co., supra,* 312 F.2d at 243–244, believes that Chairman Celler and the Committee reports more accurately state congressional definition and intent of both §§ 4B and 5(b).

23. Atlantic City v. General Electric Co., *supra*, was a 6 to 1 *en banc* opinion.

24. *Kansas City, Missouri, supra,* 310 F.2d at 282.

own complaints. Specifically tailored as they were for antitrust litigation, this court cannot but determine that § 5(b) certainly, and § 4B rationally, were intended by Congress to become an integral part of the entire antitrust legislative scheme.

It thus appears to this court that the only statutory "right" given to a defendant in an antitrust case, viz., the right to interpose the bar of limitations to attempted tolling of § 5(b) by Rule 23, F.R.Civ.P., is a substantive right—as a necessary segment of the total sphere of antitrust legislation. Any attempt to additionally toll § 5(b) via the Federal Rules of Civil Procedure would appear to be an abridgement of that substantive right.

As the Court stated in Holmberg v. Armbrecht,[25] *supra*: "Traditionally and for good reasons, statutes of limitation are not controlling measures of *equitable* relief", and "a suit in *equity* may lie though a comparable cause of action at law would be barred." (Emphasis added.) That same Court also said: "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive." [26]

This is not an equitable action nor do any equities appear for any petitioners. As stated above, all have regularly retained counsel. The attorneys for the "relying seven" are, presumably, no country squires, but rather, sophisticated "big city" counsel, under constant retainer as such by moneyed clients. Nothing appears in any of their affidavits to indicate why they should have "relied" on Utah's counsel and suit, rather than immediately proceed to process their own claims and suits. None was foreclosed from filing his own suit by the fact that Utah's attorneys planned to file a class action.

This court can but conclude that within the statutorily created antitrust universe § 5(b) cannot be re-tolled by any Rule to permit relation back of their several causes of action by intervenors attempting to intervene in either class or non-class actions filed for violation of the antitrust laws, after the tolling period of § 5(b) has ended.

The above conclusion carries even more thrust here, where this court has determined that the action may not be maintained as a class action. The class action, in the words of the Committee,[27] has been "stripped of its character as a class action." Since there never was a class, the members of the "class" cannot claim that they started their suits, vicariously, before the tolling period expired. There being no class, there is no connecting link available, even for the "relying seven", for attachment of any "relation back" hook.

Leave to intervene, with relation back of their actions to May 13, 1969, is therefore DENIED to *all* 60-odd intervenors-petitioners.

*(2) Motion for Leave to Amend and Add Co-parties Plaintiff*

■ The object of Utah's alternative (2) motion for leave to amend and add intervenors as co-parties plaintiff under Rule 15, too, is to get the intervenors' (as additional parties) complaints related back to May 13, 1969, and "under the portcullis." While Rule 15(c) permits an amendment changing a party *against* whom a claim is asserted, under certain circumstances, to relate back—if the statute has not run, the Advisory Committee Notes of 1966 state:

"The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is

25. 327 U.S. at 396, 66 S.Ct. at 584.

26. 327 U.S. at 395, 66 S.Ct. at 584.

27. Committeee on Rules of Practice and Procedure.

that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." [28] A new party-plaintiff cannot be added by amendment after the statute has run.[29] This motion too must be denied.

### (3) Motion to Reinstate Class Action

 Utah's alternative motion (3) is that this court alter its order of December 4, 1969, under Rule 23(c) (1), F.R. Civ.P., to reinstate a class action, just for the present petitioners. Nothing contained in Utah's moving papers adds any new element or basis upon or from which this court would feel itself either impelled or compelled to change either its findings, conclusions or decision of December 4. The fact that the states of Wyoming, Idaho and Nevada and the public bodies therein who . have purchased pipe during the relevant years of the "Western Pipe Conspiracy" appear in this alternative motion to have been abandoned by Utah, also in no wise changes any basis of this court's December 4, 1969 decision. This third alternative is likewise DENIED.

### (4) Motion to Vacate Court's Non-Class Order and Permit Intervention Relating Back

 Utah's alternative motion (4) is that the court vacate its December 4 order of non-class suit, direct that notice be given to the some 800 "class members" of this court's decision of "non-class action" and permit those who want to, to intervene within a reasonable time, with their intervention relating back to May 13, 1969. While Utah urges that "Fairness and due process require that at the very least the class

members be given notice of the court's decision and a reasonable opportunity to join in this action",[30] Utah bypasses the fact that defendants as well as plaintiff have equal rights to "fairness and due process." This court has already determined the due process aspects of the case. Leaden procrastination and delay in filing their own complaints on the part of "class members" may not here, *ipso facto*, be transmuted into golden participation by the emotional wand of "fairness". This motion is but another attempt to evade the statutory bar. Unfortunately for plaintiff, for the reasons heretofore set forth it too fails, and the motion is DENIED.

### (5) Motion for Certification for Interlocutory Appeal

 As a last motion (5), Utah asks that this court's order of December 4, 1969, be certified for interlocutory appeal.

This court is not prepared so to act, at this time at least. It did not in December last, nor does it now feel, that on the facts before it there is any substantial ground for a difference of opinion as to how this antitrust case should be treated or handled. Utah, having filed its claim in time, will have its day in court. All governmental bodies in the alleged "class" who may feel themselves injured by any alleged "Western Pipe" conspirators, have had over six years within which to seek redress, jointly or severally. Each has at all times been represented by counsel; many of the cities and water and sewer districts have operating budgets in the 7 to 9 figure dollar bracket. All are—or should be— sophisticated in both competitive bidding practices as well as litigation. No "creditors' bill" situations are here in-

28. 3 Moore's Fed.Practice 15.01 [9], p. 811.

29. Iocono v. Anastasio, 79 F.Supp. 378 (S.D.N.Y.1948) ; Aarhus Oliefabrik A/S v. A. O. Smith Corp., 22 F.R.D. 33 (E.D. Wis.1958) ; Murfkan v. Kahn, 11 F.R.D. 520 (S.D.Fla.1951) ; Messelt v. Security

Storage Co., 14 F.R.D. 507 (D.Del.1953) ; Kerner v. Rackmill, 111 F.Supp. 150 (M.D.Pa.1953).

30. Plaintiff's Memorandum in Support of Motions, p. 15.

volved. All of those factors as well as more went into and compelled this court's decision of December 4, 1969.

The motion must be DENIED.

As the pleadings now stand, since petitioners have *alleged* a cause of action for the four years preceding December 12, 1969, when these motions were filed, this court could not now dismiss their complaints. In futuro, it can only rule on problems, discovery, etc., for periods after, as distinguished from prior to December 12, 1964, in the context of the statutory bar for any transactions or claims arising prior thereto. Therefore as to all parties-plaintiff now before the court, the court's rulings do not with finality dispose of their cases. If, however, petitioners claims were limited to pre-December 12, 1964 transactions, different legal aspects would arise.

Defendants will prepare the necessary order.