Simon ANSCHUL, Individually and on behalf of all persons similarly situated, Plaintiff-Appellant,

v.

SITMAR CRUISES, INC., Defendant-Appellee.

No. 74–1908.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1976.

Decided May 17, 1976.

Certiorari Denied Oct. 18, 1976.

See 97 S.Ct. 272.

Erwin I. Katz, Chicago, Ill., for plaintiff-appellant.

Michael A. Snyder, Chicago, Ill., for defendant-appellee.

Before SWYGERT and BAUER, Circuit Judges, and BRYAN, Senior District Judge.*

PER CURIAM.**

Defendant-appellee Sitmar Cruises, Inc., advertised and sold tickets for a 14-day pleasure cruise departing and returning to Los Angeles, California. The original itinerary included the ports of Acajutla, El Salvador, and Cabo San Lucas. Before departing Sitmar gave notice to various travel agents that these two ports (which were located in the southern tip of the proposed cruise) had been eliminated from the scheduled ports-of-call. Defendant stated that the change in plans was due to the fuel crisis during the winter of 1973–74. The defendant alleges that it was unable to

---

* The Hon. Frederick van Pelt Bryan, Senior District Judge, Southern District of New York, is sitting by designation.

** The original panel voted 2–1 to allow an interlocutory appeal from denial of class status which would overrule previous decisions of this Court. *King v. Kansas City,* 479 F.2d 1259 (7th Cir. 1973); *Thill Securities Corp. v. New York Stock Exchange,* 469 F.2d 14 (7th Cir. 1972).

The proposed opinion was circulated to all the active members of the Court pursuant to the Court's internal rules. However, the entire Court voted against allowing an appeal from a denial of class status as a matter of right. Thus, this per curiam opinion represents the views of Judge Frederick van Pelt Bryan as well as the active members of the Court, except Judges Swygert and Bauer, who dissent.

secure a commitment for sufficient fuel in the southern ports. The 757 passengers were still provided with a 14-day cruise. The port of Manganillo was added to the itinerary and the passengers were given an extra day in Acapulco.

The passage contracts had been negotiated on behalf of the defendant by different travel agencies. Notice of the change in itinerary was only given to the respective travel agents. This notice advised the agents to notify the individual passengers who had already booked passage.

The individual passenger tickets contained a provision under paragraph 18(c) requiring that notice of any claim against the carrier be made within fifteen days after completion of the cruise. Within the fifteen day period plaintiff caused a notice of claim to be served on the defendant Sitmar Cruises on behalf of himself and sought to serve notice for all persons similarly situated. This lawsuit followed seeking damages, in the alternative, for (a) the difference in value between the cruise as advertised and as performed, or (b) the amount by which defendant was unjustly enriched by the elimination of the ports-of-call.

The trial court entered an opinion and order denying class action status to the plaintiff on the basis that the plaintiff's notice of the claim was not effective to preserve or create a cause of action for all the other passengers. Plaintiff seeks a review of the trial judge's decision.

## I. THE DEATH KNELL DOCTRINE

The issue of whether or not an order denying class status is appealable [1] was first seriously presented in *Eisen v. Carlisle & Jacquelin*, 370 F.2d 119 (2d Cir. 1966), cert. denied, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967) [*Eisen I.*]. The case earned immediate fame because of the difficulty of the litigation and its immense proportions.[2] In *Eisen* I the Court of Appeals for the Second Circuit said:

"Dismissal of the class action in the present case . . . will irreparably harm [the plaintiff] and all others similarly situated, for, as we have already noted, it will for all practical purposes terminate the litigation. Where the effect of a district court's order, if not reviewed, is the death knell of the action, review should be allowed."

■ Thus nearly ten years ago the "death knell" doctrine was born. However the idea never really has reached maturity. For awhile the Second Circuit used the

1. The question of appealability has been raised from both affirmative and negative orders. For decisions denying class status see *King v. Kansas City*, 479 F.2d 1259 (7th Cir. 1973) (per curiam); *Eisen v. Carlisle & Jacquelin, supra* [*Eisen I*]; *Shayne v. Madison Square Garden Corp.*, 491 F.2d 397 (2nd Cir. 1974); *Korn v. Franchard Corp.*, 443 F.2d 1301 (2nd Cir. 1971); *Caceres v. Int. Air Transport Association*, 422 F.2d 141 (1970); *City of New York v. International Pipe & Ceramics Corp.*, 410 F.2d 295 (2nd Cir. 1969); *Green v. Wolf Corp.*, 406 F.2d 291 (2nd Cir. 1968); *Hackett v. General Host Corp.*, 455 F.2d 618 (3d Cir. 1972); *Graci v. United States*, 472 F.2d 124 (5th Cir. 1973); *Miller v. Mackey Int'l Inc.*, 452 F.2d 424, 427, n. 3 (5th Cir. 1971); *Gosa v. Securities Investment Co.*, 449 F.2d 1330 (5th Cir. 1971); *Falk v. Dempsey-Tegeler & Co.*, 472 F.2d 142 (9th Cir. 1972); *Gerstle v. Continental Airlines, Inc.*, 466 F.2d 1374 (10th Cir. 1972). Also cf. *Jumps v. Leverone*, 150 F.2d 876 (7th Cir. 1945).

For decisions granting class status see: *Thill Securities Corp. v. New York Stock Exchange*, 469 F.2d 14 (7th Cir. 1972); *Eisen v. Carlisle &*

*Jacquelin*, 2 Cir., 479 F.2d 1005 [*Eisen III*] and 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) [*Eisen IV*]; *Parkinson v. April Industries*, 520 F.2d 650, ¶ 95,227 CCH Trade Reg. Rep. (2d Cir. 1975); *General Motors Corp. v. City of New York*, 501 F.2d 639 (2d Cir. 1974); *Kohn v. Royall, Koegel & Wells*, 496 F.2d 1094 (2d Cir. 1974); *Herbst v. International Telephone & Telegraph*, 495 F.2d 1308 (2d Cir. 1974); *Walsh v. City of Detroit*, 412 F.2d 226 (6th Cir. 1969) (per curiam).

2. *Eisen* involved a class action on behalf of all odd-lot traders on the New York Stock Exchange for a certain four year period, charging various brokerage firms, which handle 99% of the Exchange's odd-lot business, and the Exchange itself, with violating the antitrust and securities laws. The district court found that the suit could be maintained as a class action, and, after finding that some 2¼ million members of the prospective class would be identified, that it would cost $225,000 to send individual notices to class members.

death knell doctrine as an exception to the finality rule of 28 U.S.C. § 1291[3] and allowed an interlocutory appeal in cases wherein the plaintiff's individual claim was so small that continued prosecution of the complaint was improbable. *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968); *Korn v. Franchard Corp.,* 443 F.2d 1301 (2d Cir. 1972). We rejected the death knell doctrine in *King v. Kansas City Southern Industries,* 479 F.2d 1259 (7th Cir. 1973) as did other circuits in *Hackett v. General Host Corporation,* 455 F.2d 618 (3d Cir.), *cert. denied,* 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972); *Graci v. United States,* 472 F.2d 124 (5th Cir.), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973); *Falk v. Dempsey-Tegeler & Co., Inc.,* 472 F.2d 142 (9th Cir. 1972). Generally these decisions criticize the death knell doctrine as being too mechanical and having a discriminatory effect in that it does not permit appeals by defendants or by plaintiffs who had the economic ability or personal interest to prosecute the lawsuit on their own behalf. Eventually even in the Second Circuit, "the rumblings of disapproval" were heard[4] as was noted recently in *Shayne v. Madison Square Garden Corp.,* 491 F.2d 397 (2d Cir. 1974). However, the court decided not to take a second look at the death knell doctrine because of the pendency of the *Eisen* case in the Supreme Court.

## II. THE COLLATERAL ORDER DOCTRINE

In *Eisen,* preliminary to its decision on the merits, the Supreme Court was required to "decide whether the Court of Appeals in *Eisen* III had jurisdiction to review the District Court's orders permitting the suit to proceed as a class action and allocating costs of notice," 94 S.Ct. 2148. The Supreme Court found the question under its consideration controlled by its prior decision in *Cohen v. Beneficial Indus. Loan Corp.,*

337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Quoting from *Cohen,* the Court stated:

"This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

The Court then reasoned:

"Analysis of the instant case reveals that the District Court's order imposing 90% of the notice costs on respondents likewise falls within, 'that small class'. It conclusively rejected respondent's contention that they could not lawfully be required to bear the expense of notice to the members of petitioner's proposed class. Moreover, it involved a collateral matter unrelated to the merits of petitioner's claims. Like the order in *Cohen,* the District Court's judgment on the allocation of notice costs was a 'final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it,' id., at 546–547, 69 S.Ct. 1226, and it was similarly appealable as a 'final decision' under § 1291 . . . ." 94 S.Ct. 2150, 2149–50.

The Court then held that the court of appeals had jurisdiction to review fully the district court's resolution of the class notice problem in that case. In this Circuit, since we do not believe that the death knell doctrine is a viable test we must determine whether the collateral order doctrine is applicable in light of the Supreme Court's recent decision. The Court must determine whether the decision of the district court denying class action status falls within "that small class" of decisions defined in *Cohen, supra,* in that it finally determined a claim of right separable from, and collateral to, rights asserted in the action; which

---

**3.** 28 U.S.C. § 1291 provides that:

"The courts of appeals shall have jurisdiction of appeals from all *final* decisions of the district courts . . . ." (emphasis added).

**4.** An excellent analysis of the genesis of the death knell doctrine and the problems it created appear in *Kohn v. Royall, Koegel & Wells, supra.*

claim of right is too important to be denied review, and, too independent of the cause itself, to require that appellate consideration be deferred until the whole case is adjudicated.

We conclude that this case does not fall within that small class.

Unlike the Supreme Court's decision in *Eisen* there is no question raised about the cost of notice. *Eisen* involved a district court order allowing class designation and apportioning the cost of notice. This case only presents the question of whether or not the district court order denying class status was improper. That question can still be reviewed on the merits after the case has reached final judgment. Here there is no claim of right which will escape review.

## III. APPELLATE REVIEW UNDER 28 U.S.C. § 1292(b) CERTIFICATION

We fully realize that by our continued refusal to review district court decisions denying and granting class status there is a possibility of procedural problems preventing a proper review of the substantive issues.

In recent years, class actions "have sprouted and multiplied like the leaves of the green bay tree" (*Eisen III* at 1018), allowing the federal courts the opportunity to deal with important rights of consumers and small claimants whose individual claims might otherwise have never been recognized. Concomitant with these new oppor-

tunities provided by Rule 23 F.R.C.P. comes the responsibility, which must be borne by the courts, of developing the law in a way which is consistent with both the limited resources of the federal court system and the rights of the parties to adequately present the appropriate claims and defenses.

■ The threshold decision of whether to allow class status is enormously important. Since the adoption of Rule 23 eight years ago most decisions have advocated that it be construed liberally. However, there are only a limited number of appellate decisions which provide any meaningful guidelines for the district court in making a determination on class status. Nevertheless a clear majority of the members of the district court have acted admirably in handling these problems. Our judicial system is built in large part on the studied discretion of the individual trial judge. Consequently we are not shocked nor disturbed by the fact that the trial judge alone must make the "big decision." [5] The problem, of course, is the case wherein the parties and the court are in agreement that the class decision is unprecedented and difficult. Thus in these few instances where the question of class status is a very close decision a certification under 1292(b) might be appropriate.[6] This approach has now found some support in the Second Circuit where the death knell doctrine difficulties have become obvious. As Judge Friendly stated in *Parkinson v. April Indus.*, 520 F.2d 650 (2d Cir. 1975):

---

**5.** We believe that in the rare situation where a trial court acts with total arbitrariness in ruling on class certification, or neglects to issue initial ruling the litigants will be protected by the ultimate remedy of mandamus under the All Writs Act, 28 U.S.C. §. 1651 (1970). But we caution against futile exercises of this remedy in situations wherein it is not warranted. See *Shutte v. Armoco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *Swindell-Dressler Corp. v. Dumbauld*, 308 F.2d 267 (3d Cir. 1962); *Hackett v. General Host Corp., supra; Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l., Inc.*, 455 F.2d 770, 775 (2d Cir. 1972); *Gold Strike Stamp Co. v. Christensen*,

436 F.2d 791 (10th Cir. 1970); 74 Harv.L.Rev. 351, 375–378.

**6.** 28 U.S.C. § 1292(b) (1970) provides, in part:
"When a district judge, in making a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal."

"The § 1292(b) procedure permits determination whether there is to be an appeal within weeks rather than months. To be sure, since that procedure requires initial certification by the district court, there is the possibility that an obdurate judge might thwart review in a case where the court of appeals would be disposed to grant it; but this risk must be weighed against the valuable input which district judges can make in cases of this sort and the disadvantages of any other procedure. Moreover, as said in *Hackett v. General Host Corp., supra,* 455 F.2d at 624, 'If in isolated instances arbitrariness creeps in, there remains the ultimate remedy of mandamus' with respect to the grant or denial of class action status.

Since the attempts to imprison the appealability of orders granting or denying class action designation within judicially-created formulae have proved to be failures and, in my judgment, will continue to be so, we should return to the earlier wisdom."

■■■ Previously this Court has suggested appeals under § 1292(b)[7] because we believe this procedure was intended by the Committee that drafted revised Rule 23.[8] In other circuits interlocutory appeals under § 1292(b) have been granted to review class action determinations.[9] Thus by our decision today we seek not to broaden our jurisdiction but simply to reaffirm the use of the § 1292(b) procedure in those limited situations wherein the trial judge determines that there is substantial ground for difference of opinion on the question of class status and that an immediate appeal may materially advance the ultimate termination of the case. Since we continue to reject the death knell doctrine and because we do not think that the collateral order doctrine is applicable there is no way we can consider appellant's claim since it was not raised under § 1292(b). The § 1292(b) procedure does not require that every time a trial judge makes a determination on class status that the question must be certified for appeal. Furthermore, under § 1292(b) this Court has the option not to hear the appeal if certification was improvidently granted.

APPEAL DISMISSED FOR WANT OF JURISDICTION.

SWYGERT and BAUER, Circuit Judges (dissenting).

There are two central questions dealing with class actions brought under Rule 23 of the Federal Rules of Civil Procedure in this appeal: first, whether a denial of class status presents an appealable order; and, secondly, whether the district court was correct in its determination that notice of a claim, required under a passenger contract, was not effective to preserve or create a cause of action for all the other passengers.

As the *per curiam* opinion notes, the district court denied plaintiff's motion for a determination of a class concluding that the

---

7. The Court of Appeals for the Seventh Circuit has previously suggested that this approach might be used on at least three different occasions in *King v. Kansas City, supra;* in *Thill Securities Corp. v. New York Stock Exchange, supra;* and in its unpublished orders in *Garza v. Chicago Health Clubs, Inc.,* No. 73–1012 (7th Cir., May 18, 1973); *Lupia v. Stella D'Oro Biscuit Co., Inc.,* No. 73–1–26 (7th Cir., May 18, 1973), *cert. denied,* 417 U.S. 930, 94 S.Ct. 2639, 41 L.Ed.2d 232 (1974), and *Winokur v. Bell Savings and Loan Association,* No. 72–2029 (7th Cir., May 18, 1973), *cert. denied,* 417 U.S. 930, 94 S.Ct. 2639, 41 L.Ed.2d 233 (1974). See also *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969); 7A Wright & Miller, *Fed. Practice and Procedure* § 802; Note 70 Columbia L.Rev. 1292 (1970).

8. Professor Kaplan, Reporter of the Advisory Committee which drafted revised Rule 23, urged liberal use of the § 1292(b) procedure. Kaplan, continuing work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I).

9. See *Zahn v. International Paper Co.,* 53 F.R.D. 430, 434, *aff'd,* 469 F.2d 1033 (2d Cir. 1972), *aff'd,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Wilcox v. Commerce Bank of Kansas City,* 474 F.2d 336 (10th Cir. 1973); *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969).

notice by the plaintiff "on behalf of himself and all others similarly situated" would not serve to circumvent the contract provision. Since only four passengers had complied with the fifteen-day notice requirement, the court found that the class was not so numerous as to make joinder impracticable, nor was there a showing that a class action was superior to other methods of adjudicating the controversy. We dissent from that part of the *per curiam* opinion which holds that decisions of the district courts which deny class action status do not fall within "that small class" of decisions as defined in *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).[1] This dissent will address only the appealability of determinations of class action status.

The question this court initially confronts in cases of this nature is whether the denial of the plaintiff's motion for a determination of a class is an appealable order and, accordingly, whether there is jurisdiction to review the action of the trial court.

The plaintiff here has argued that the Supreme Court's decision in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*Eisen IV*), supports his contention that the instant order denying class certification is appealable. Although *Eisen IV* may not be read as providing authority for a broad holding that all orders of class determination under Rule 23 are appealable under the collateral order doctrine as developed in *Cohen v. Beneficial Loan Corp., supra,* there is language in Mr. Justice Powell's opinion which points in that direction. As the *per curiam* opinion notes, the specific question before the Court in *Eisen IV* was whether the defendants could lawfully be required to bear the costs of notice to members of a class and the question of appealability of

class determination was therefore not directly confronted.[2]

The Court did state, however, when commenting on the finality requirement of 28 U.S.C. § 1291 that:

[w]hile the application of § 1291 in most cases is plain enough, determining the finality of a particular judicial order may pose a close question. No verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide an utterly reliable guide for the future. We know, of course, that § 1291 does not limit appellate review to "those final judgments which terminate an action . . . ." *Cohen v. Beneficial Loan Corp.,* 337 U.S. [541], 545, 69 S.Ct. [1221], at 1225 [93 L.Ed. 1528] (1949), but rather that the requirement of finality is to be given a "practical rather than a technical construction." *Id.,* at 546, 69 S.Ct. [1221], at 1226. The inquiry requires some evaluation of the competing considerations underlying all questions of finality—"the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." *Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950) (footnote omitted.) *Eisen IV* at 155–56, 94 S.Ct. at 2149, 40 L.Ed.2d at 744.

The collateral order doctrine has been applied recently by the Second Circuit in an opinion holding that an order allowing a class action was appealable. Judge Lumbard in *Herbst v. ITT,* 495 F.2d 1308 (2d Cir. 1974), reasoned:

We believe that immediate review of orders authorizing class actions will aid the district courts in disposing of these cases and promote the sound administration of justice.

First, as noted in *Eisen III* defendants in litigating class actions are likely to

---

1. *See per curiam* opinion, pp. 1367–1368.

2. We are mindful that it might be argued that since the order relating to the costs was premised on an order of class determination, the Court, in order to reach the subsumed question relating to notice problems, recog-

nized *sub silentio* the appealability of the district court's original order denying class certification. If this original order was not appealable, then there was no jurisdictional basis for *Eisen II* and III, and any question of costs of notice would never have been reached.

expend much money and time in defending such actions because of the enormous damages sought by the representatives of the class. Also the representation features of class actions mean that both parties have to expend much effort and money in notifying members of the class, determining who is in and who has opted out, calculating damages, and the like. Furthermore, the district courts, if cases go beyond initial proceedings, themselves must exercise more effort in supervising such actions than they would in individual cases. See *West Virginia v. Chas. Pfizer & Co.,* 314 F.Supp. 710 (S.D.N.Y.1970), aff'd, 440 F.2d 1079 (2d Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). Rule 23(e) requires them to approve any settlements and Rule 23(d) gives them the power and the responsibility of making orders determining the course of proceedings and protecting the members of the class. These gargantuan actions naturally take up infinitely more of the court's time than most other civil actions.

We believe that in the exercise of our supervisory powers over the administration of justice in the district courts it is desirable for us to review orders authorizing class actions before the parties and the district courts expend large amounts of time and money in managing them. Candor compels us to add that as appellate judges we would be reluctant to hold that a class action had been improper after the district court and the parties had expended much time and resources although we might have had serious doubts if we had reviewed the question at the inception of the action. Judicial efficiency requires that appellate review be made before the parties and district courts have spent considerable time, effort, and money, on such actions. Reviewing orders allowing class actions to proceed would determine issues "fundamental to the further conduct of the case," *United States v. General Motors Corp.,* 323 U.S. 373, 377, 65 S.Ct. 357, 89 L.Ed. 311 (1945), and would constitute a most effective way of exercising our supervisory powers.

Second, defendants in class actions often face potential damages in the millions of dollars. . . . Often these cases are settled even though the validity of plaintiff's claims are doubtful. . . . [thus] no appellate court will ever review the question of whether a class action was proper unless immediate review is allowed. We, therefore, conclude that we have jurisdiction to hear this appeal.

The *Herbst* decision goes one step beyond the conclusion reached in *Eisen IV* since there was no question of costs of notice presented on that appeal. We believe it is a logical and necessary step in light of the Supreme Court's decision. Moreover, we believe that orders disallowing such actions should also be appealable under the collateral order doctrine.[3]

By an interlocutory review of a disallowance of a class action a more just treatment is afforded not only the named plaintiff and the potential members of the class but also the defendant. For example, a denial of immediate appeal may represent, for the absent class members, a denial of the very right to be represented. A named plaintiff may not seek to appeal the class determination order after he has gotten a favorable verdict. *See* Judge Hays' dissent in *City of New York v. International Pipe & Ceramics Corp.,* 410 F.2d 295, 300–01 (2d Cir. 1969). Indeed the defendant may contend that the named plaintiff having won, no longer has standing to contest the issue since he has no further "stake" in the litigation. Or the plaintiff's individual claim may be so small that he will choose to give up the ghost altogether if he is denied a class action. Thus, the absent members of the plaintiff class may be left with only the opportunity to pursue their individual claims, and the

---

**3.** At least one state supreme court has reached the conclusion that order denying class action status possess "sufficiently practical aspects of finality to make them appealable." *Bell v. Beneficial Consumer Discount Co.,* 348 A.2d 734, 44 U.S.L.W. 2275, Pa.Sup.Ct., 1975.

purpose of Rule 23 may be frustrated, not by failure to satisfy the requirements of the rule itself, but by mere passage of time.

The finality rule places burdens on named plaintiffs also. The Court of Appeals for the Second Circuit, in *Eisen I*, developed the "death knell" doctrine to escape such hardships. This doctrine was used to allow an interlocutory appeal in cases wherein the plaintiff's individual claim was so small that continued prosecution of the complaint was improbable. *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968); *Korn v. Franchard Corp.*, 443 F.2d 1301 (2d Cir. 1972). We rejected the "death knell" doctrine in *King v. Kansas City Southern Industries*, 479 F.2d 1259 (7th Cir. 1973), as did other circuits, *Hackett v. General Host Corporation*, 455 F.2d 618 (3d Cir.), *cert. denied*, 407 U.S. 928, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1973); *Graci v. United States*, 472 F.2d 124 (5th Cir.), *cert. denied*, 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973); *Falk v. Dempsey-Tegeler & Co., Inc.*, 472 F.2d 142 (9th Cir. 1972). The *per curiam* opinion at page 1367 notes that "generally these decisions criticize the death knell doctrine as being too mechanical and having a discriminatory effect in that it does not permit appeals by defendants or by plaintiffs who had the economic ability or personal interest to prosecute the lawsuit on their own behalf." We agree that there should be no distinction between the plaintiff who has such a small individual claim that an order denying a class action will sound the "death knell" of his action and the plaintiff whose claim is of such size

that he is likely to pursue it despite the denial of a class action.

We disagree with the *per curiam* determination which would leave only interlocutory review under 28 U.S.C. § 1292(b)[4] or a writ of mandamus under the All Writs Act as the recourse for a plaintiff who has been rebuffed in seeking to maintain a class action. These circuitous routes are uncertain and difficult and are likely to be counterproductive. *See* Note, *Interlocutory Appeal from Orders Striking Class Action Allegations*, 70 Col.L.Rev. 1292.

With respect to the defendant, a delay in the review of an order disallowing a class action until the suit is terminated may mean a pyrrhic victory. If the plaintiff is successful on the merits and a class certification is allowed on appeal, the defendant faces the one-way intervention problem with all its obvious consequences. *See American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 545–49, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

These factors, we believe, when balanced against the possible inconvenience and costs of piecemeal review noted by Mr. Justice Powell in *Eisen IV*, mandate that such determinations be appealable.[5] Although an argument might be made should this be the case that, since Rule 23(c)(1) provides that orders regarding the maintenance of a class action may be "altered or amended before the decision on the merits," the court of appeals would be faced with successive interlocutory appeals in class action cases, this theoretical possibility ought not deter

---

4. There is no doubt that certification of appeals under section 1292(b) is not a common practice encouraged in this circuit or in most others. Generally it is not used in determining the class question despite the fact that liberal use of section 1292(b) was recommended by the Advisory Committee which drafted Rule 23. *See Hyatt v. United Aircraft*, 50 F.R.D. 242, 248 (D.C.Conn.1970); *Utah v. American Pipe and Constr. Co.*, 50 F.R.D. 99, 109 (C.D.Cal.1970); *Weisman v. MCA, Inc.*, 45 F.R.D. 530, 531 (D.Del.1968). *See also Hackett v. General Host Corp.*, 455 F.2d 618, 620 (3d Cir. 1973); *Interpace Corp. v. Philadelphia*, 438 F.2d 401, 403 (3d Cir. 1971); *Caceres v. International Air Transport Ass'n*, 422 F.2d 141, 144 (2d Cir.

1970); *City of New York v. International Pipe and Ceramics Corp.*, 410 F.2d 295, 298 (2d Cir. 1969).

5. The adoption of this analysis would overrule *Thill Securities Corp. v. New York Stock Exchange*, 469 F.2d 14 (7th Cir. 1972), where this court held that an order authorizing a class action was not appealable prior to a determination of the merits. In *King v. Kansas City Southern Indus., Inc.*, 479 F.2d 1259 (7th Cir. 1973), we extend the holding in *Thill* by ruling that an order denying a motion to have the suit designated a class action was not appealable.

us from taking a clear stand on the appealability of all orders relating to class determination. Experience teaches that it would be a rare case when the specter of multiple appeals in the same case became a reality.

As additional authority for this conclusion we would look to Rule 23(c)(1) itself which provides:

> As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

We believe that this means not only that the district court should determine the class action certification before hearing the merits of the suit as we held in *Peritz v. Liberty Loan Corp.*, 523 F.2d 349 (7th Cir. 1975), but also that such a determination should be subject to an interlocutory appellate review so that the class action question is finally settled at this stage of the litigation.

The spirit as well as the purpose of the rule would be better served by such interlocutory review. That spirit and purpose should not be frustrated by an unarticulated and perhaps subconscious hope on the part of appellate judges that if review of important class action determinations are delayed until the merits of the suit have been decided, the question of such class determination may be mooted and difficult questions avoided. The rights involved in the certification of a class action are simply too important to be left to chance. These rights fall within the rationale of *Cohen v. Beneficial Loan Corp., supra,* as affirmed in *Eisen IV*:

> This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. 337 U.S. at 546, 69 S.Ct. at 1225.

For the reasons stated above, we would proceed to a consideration of the plaintiff's claim that the district court erred in holding that a class action was not maintainable.[6]

---

6. We do not reach this issue in view of the resolution of the question concerning appealability of class actions.