In re FOLDING CARTON ANTITRUST LITIGATION.

No. MDL 250.

United States District Court,
N. D. Illinois, E. D.

July 15, 1977.

Perry Goldberg, Specks & Goldberg, Ltd., Lee A. Freeman, Sr., Freeman, Rothe, Freeman & Salzman, Chicago, Ill., Co-chairmen, Plaintiffs' Executive Committee.

James B. Sloan, Sloan & Connelly, Chicago, Ill., Plaintiffs' Coordinating Secretary.

Josef D. Cooper, Cooper & Scarpulla, San Francisco, Cal., Chairman Plaintiffs' Briefing Committee.

Lee A. Freeman, Jr., Freeman, Rothe, Freeman & Salzman, Lawrence H. Eiger, Fortes, Eiger, Epstein & Skirnick, Chicago, Ill., Hazel Weiser, Cooper & Scarpulla, San Francisco, Cal., Lowell E. Sachnoff, Sachnoff, Schrager, Jones & Weaver Ltd., Chicago, Ill., Stephen D. Susman, Mandell & Wright, Houston, Tex., Harold E. Kohn, Dianne M. Nast, Kohn, Savett, Marion & Graf, P. C., Philadelphia, Pa., Jerry S. Cohen, Kohn, Milstein & Cohen, Washington, D. C., Members, Plaintiffs' Briefing Committee.

John J. McHugh, Kayser, Ruggles, McGee & Hastings, Chicago, Ill., Chairman, Defendants' Executive Committee, and Donald G. Kempf, Jr., Kirkland & Ellis, Chicago, Ill., Co-Chairman, Defendants' Executive Committee, for defendants.

Roger B. Harris, Altheimer & Gray, Chicago, Ill., Defendants' Coordinating Secretary.

## PRETRIAL ORDER NO. 20

### MEMORANDUM AND ORDER

ROBSON, Senior District Judge and WILL, District Judge.

Certain defendants[1] have moved to amend this court's class action certification order, Pretrial Order No. 13, *nunc pro tunc,* to certify it for interlocutory appeal pursuant to the provisions of 28 U.S.C. § 1292(b). For the reasons hereinafter stated, the motion is denied and the class heretofore certified is amended as provided herein.

### BACKGROUND

Subsequent to the United States' filing of a criminal action and a companion civil action, more than 50 private treble damage suits alleging antitrust violations were filed throughout the country. Almost all of the complaints allege that, at least as early as 1960, defendants and various named and unnamed co-conspirators have conspired in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, to fix, maintain, and stabilize the prices of folding cartons. Many of the complaints also allege monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. These actions are brought un-

---

[1] The following defendants have joined in the Motion for Certification: Alton Box Board Company, American Can Company, Brown Company, Burd & Fletcher Company, F. N. Burt Company, Inc., Champion International Corporation, Consolidated Packaging Corporation, Diamond International Corporation, Eastex Packaging, Inc., Federal Paper Board Company, Inc., Fibreboard Corporation, The A. L. Garber Company, Inc., Georgia-Pacific Corporation, Gulf States Paper Corporation, Hoerner Waldorf Corporation, International Paper Company, Interstate Folding Box Company, The Mead Corporation, Olinkraft, Inc., Packaging Corporation of America, Potlatch Corporation, Rexham Corporation, St. Regis Paper Company, and Weyerhaeuser Company. Container Corporation, the single largest defendant, has not joined the motion. Plaintiffs oppose the motion.

der Section 4 of the Clayton Act, 15 U.S.C. § 15, and 28 U.S.C. § 1337. Pursuant to orders of the Judicial Panel on Multidistrict Litigation, these civil actions, captioned "In Re Folding Carton Antitrust Litigation," were transferred to this court to be coordinated for pretrial proceedings. On April 19, 1977, we granted plaintiffs' motion for certification of a class action. Following are the relevant portions of our Memorandum and Order, Pretrial Order No. 13:

"All parties have been given ample opportunity to address the class certification issue. The matter was briefed extensively with supporting affidavits attached. Defendants have filed numerous objections to the maintenance of these suits as a class action under Rule 23. After considering the pleadings, the memoranda and arguments of counsel, the affidavits and exhibits filed, and the established legal principles, the court finds that:

1. The prerequisites of a class action as required by Rule 23(a) have been met.

2. The requirements of Rule 23(b)(3) are satisfied in that for the class here certified

(a) the nationwide price fixing conspiracy asserted presents questions of law and fact common to the class members which predominate over any questions affecting only individual members;

(b) the class offers a superior method for the fair and efficient adjudication of the controversy over any other available methods.

The court hereby determines that the following class shall be, and is hereby certified:

All persons in the United States (excluding Defendants, their subsidiaries, affiliates or agents), who purchased folding cartons manufactured by any of the Defendants in these actions, (a) directly, or indirectly as first users, for their own business or commercial use, or, (b) directly, for resale as such, during the period from January 1, 1960 to December 31, 1974."

## THE MOTION

■ Defendants, other than Container Corporation, have moved to amend Pretrial Order No. 13, *nunc pro tunc*[2] to certify it pursuant to 28 U.S.C. § 1292(b).[3] They contend that the Court of Appeals for the Seventh Circuit has expressly endorsed the use of § 1292(b) for interlocutory review of class action determinations. *Anschul v. Sitmar Cruises, Inc.,* 544 F.2d 1364 (7th Cir.), *cert. denied,* 429 U.S. 907, 97 S.Ct. 272, 50 L.Ed.2d 189 (1976). They argue that certification is appropriate here because there are six controlling questions of law [discussed *infra*] as to which there are substantial grounds for difference of opinion. In their reply memorandum, they submit, for the first time, that interlocutory review may materially advance the ultimate termination of this litigation.

It should first be noted that the *Anschul* case is substantially different from the one at bar. That action was brought by a passenger on a pleasure cruise on behalf of himself and all other passengers, based upon the allegation that the cruise did not make all the stops announced on its itinerary. It was not an antitrust action, and class certification was denied by the District Judge. Moreover, plaintiff appealed

---

**2.** The motion incorporates the "Memorandum of Certain Defendants Regarding Proposed Class Action Ruling and Application for Certification for Interlocutory Appeal."

**3.** 28 U.S.C. § 1292(b) provides as follows:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

pursuant to § 1291, not § 1292(b), and the appeal was dismissed.

Defendants' reliance on *Anschul* for the proposition that interlocutory review of the class action determination here is appropriate is misplaced. In its dictum discussion of § 1292(b), the Court concluded that "[t]he § 1292(b) procedure does not require that every time a trial judge makes a determination on class status that the question must be certified for appeal." *Id.* at 1369. In fact, the Court suggested that § 1292(b) certification may be appropriate only in those few instances where the parties and the court agree that the decision is unprecedented and difficult. As stated at 1368:

> [o]ur judicial system is built in large part on the studied discretion of the individual trial judge. Consequently we are not shocked nor disturbed by the fact that the trial judge alone must make the 'big decision.' The problem, of course, is the case wherein the parties and the court are in agreement that the class decision is unprecedented and difficult. Thus in these few instances where the question of class status is a very close decision a certification under § 1292(b) might be appropriate. (Footnotes omitted)

Accordingly, § 1292(b) is only to be used in those limited situations wherein the trial court "determines that there is a substantial ground for difference of opinion on the question of class status and that an immediate appeal may materially advance the ultimate termination of the case." *Id.* at 1369.

## NO CONTROLLING QUESTION OF LAW/NO SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

As indicated, defendants contend that certification is appropriate in this case be-cause there are six controlling questions of law as to which there are substantial grounds for difference of opinion. We have examined these alleged questions—although not in the order presented by defendants—and for the reasons hereinafter stated, conclude that there is no controlling question of law on the class action determination as to which there is a substantial ground for difference of opinion.

*Questions 2 and 4—Specific Findings* [4]

■ Defendants argue that a class cannot be certified unless this court makes specific findings with regard to the superiority of the class proceeding and other findings allegedly required by Rule 23(b)(3), Fed.R.Civ.P. However, Rule 52(a), Fed.R. Civ.P., does not require findings of fact on a motion for class action determination.[5] Moreover, we made findings in Pretrial Order No. 13 which fully support the class certification.

Defendants nonetheless contend that under Rule 23(b)(3) this court was required to make the kind of detailed findings articulated in *Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). In particular, defendants maintain that we failed to make the requisite "predominance" and "superiority" findings. According to the *Carte Blanche* court, the predominance finding requires "the identification of the legal and factual issues, common and diverse, and an identification of the class members to which those relate," while the superiority finding requires at a mini-

---

**4.** Question 2 states as follows:

Whether a determination in favor of a class action is proper without specific findings regarding "(1) an informed consideration of alternative available methods of adjudication of each issue, (2) a comparison of the fairness to all whose interests may be involved between such alternative methods and a class action, and (3) a comparison of the efficiency of adjudication of each method,"—particularly in view of Chief Judge Parsons' statement that this is a case "in which were all of the defendants to demand one trial, with or without a jury, no judge or jury could give each defendant an independent trial that would be fair and impartial." (Footnotes omitted)

Question 4 states as follows:

Whether a class action certification under Rule 23(b)(3) is proper without specific findings.

**5.** With regard to whether findings are required under Rule 52(a), *compare* the majority opinion in *Interpace Corporation v. City of Philadelphia,* 438 F.2d 401, 404 (3d Cir. 1971), *with* the dissenting opinion of Judge Adams at 404–07.

mum "an informed consideration" of alternative methods of adjudication, including their relative fairness and efficiency. *Id.* at 756–57. Defendants maintain that the findings contained in Pretrial Order No. 13 are meager and conclusory and that they do not satisfy the mandate of *Carte Blanche.* Defendants also argue that, in view of the critical importance of the class action determination, an explanation of our resolution of the issues presented by the briefs and affidavits was also required.

We disagree. Judges in this district are not obligated to follow a decision of the Third Circuit, and defendants have not cited any Seventh Circuit authority adopting the *Carte Blanche* approach. Further, when Pretrial Order No. 13 was issued, we were not required to furnish an exhaustive opinion dealing with each and every argument raised by the parties. The mere fact that an extensive opinion was not handed down does not mean that the issues raised were not given thoughtful consideration. On the contrary, they were. When Pretrial Order No. 13 was issued, we explicated:

1. That after reviewing all the materials submitted by the litigants and the established legal principles, class certification was clearly appropriate, albeit an extended opinion would not be handed down.

2. That pursuant to Rule 23(c)(1), *"[a]s soon as practicable* after the commencement of an action brought as a class action, the court *shall determine by order* whether it is to be so maintained." (Emphasis supplied)

3. That Rule 23 is a remedial procedure which should be construed liberally to permit class actions. *Kahan v. Rosentiel,* 424 F.2d 161, 169 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26

L.Ed.2d 290 (1970); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 563 (2d Cir. 1968).

4. That Rule 23(c)(1) is available to alter or amend this court's initial decision to certify a class if a mistake is made, and that Rule 23(c)(4)(B) is available to create subclasses should it later prove necessary.

Nevertheless, we are prepared to articulate the reasons for our decision and will do so herein. Emphasis will be placed on the alleged questions of controlling law, since they embody the defendants' principal reasons why a class action cannot be properly maintained as well as why an appeal should be certified.

### Predominance Findings

In Pretrial Order No. 13 we specifically stated that the alleged nationwide price fixing conspiracy presents questions of law and fact common to the class members and that these predominate over any questions affecting only individual members. While we did not identify the particular members to which these common questions relate, it is implicit that the common questions relate to all class members.[6] Finally, to the extent that our predominance findings in Pretrial Order No. 13 might not measure up to the *Carte Blanche* standards, the discussion, *infra,* of defendants' "Question 1" [whether individual issues predominate] sets forth in great detail the reasons behind the predominance findings.

### Superiority Findings

In *Carte Blanche,* a Truth in Lending Act case, the Third Circuit held a district court's finding of superiority erroneous since there was not "an informed consideration of alternative methods of adjudication of each

---

**6.** Defendants also complain that the court made no findings identifying a typical and adequate class representative, but rather delegated the selection of a representative group to the discretion of Plaintiffs' Executive Committee. This is simply untrue, as revealed by the transcript of the proceedings held on April 19, 1977. The court stated that initially all of the plaintiffs in the litigation shall act as the class representative and that to facilitate the administration of the litigation, the plaintiffs should submit a proposed list of class representatives consisting of a limited number of class representatives not exceeding 15 in number. Except for indirect purchasers, we find the list submitted satisfactory. *See* Transcript, pages 10–11.

issue."[7] *Id.* at 757. Defendants contend that this court has likewise failed to make such a consideration. The distinction between a case in which all holders of Carte Blanche credit cards are the proposed members of a plaintiff class and one in which the first users of folding cartons are the proposed class is obvious. The difference is between millions and thousands. For the reasons hereinafter stated, we find the class action form to be clearly superior.

■ A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. *Hohmann v. Packard Instrument Company,* 399 F.2d 711 (7th Cir. 1968). This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied. As noted in *Ungar v. Dunkin' Donuts of America, Inc.,* 68 F.R.D. 65, 148 (E.D.Pa.1975), *rev'd on other grounds,* 531 F.2d 1211 (3d Cir.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976), "[s]uch a conclusion has been held sufficient to support a finding of superiority." While defendants emphasize the presence of large claimants who may have the financial ability to maintain an antitrust suit as a reason for denying class certification, their presence and the possibility that they might proceed on their own does not militate against class certification. *Id.* at 148–49. On the contrary, the potential judicial burdens of multiple lawsuits are obviated, and the sharing of the costs on an equitable basis between large, medium, and small claimants is made possible.

Another factor supporting class certification is that the defendants can be significantly aided. All members of the class who do not opt out are bound by this court's determinations. If the defendants are successful on some or all of the issues presented at trial, they are shielded against repeated and costly litigation all over the country. *Id.* at 149. Only if the defendants have slight hope of prevailing on the issue of liability is it desirable from their point of view to require each potential class member to file his own suit.

■ As discussed later in this opinion, a class action is also superior from the point of view of the issues. Class treatment is clearly appropriate where, as here, common questions of law and fact predominate.

The two possible alternative methods of adjudication are inferior. The test case approach, which may be helpful in a *Carte Blanche* or *Eisen* situation where millions of very small potential class members may be involved, is unnecessary and impractical where, as here, the plaintiff class will number in the thousands. The other approach, and one which defendants seem to suggest, is to encourage intervention and employ 28 U.S.C. §§ 1404 and 1407 and Rule 42, Fed.R. Civ.P., for the coordination of discovery and pretrial matters. Intervention, however, has many drawbacks, some of which were stated in *Herrmann v. Atlantic Richfield Company,* 65 F.R.D. 585, 591 (W.D.Pa.1974):

> To allow this action to proceed as an action by named plaintiffs with a right of intervention to other persons similarly situated, increases the risk that a significant number of persons similarly situated could either not be informed of the pendency of this case or through misunderstanding or misapprehension of the issues otherwise fail to intervene as parties plaintiff. Such a situation would be unsatisfactory to all concerned, for such persons would not have their rights adjudicated and defendant[s] would be left in the open-ended position where further lit-

7. The *Carte Blanche* court found the preferred alternative was to proceed with an individual test case as to liability. This procedure would effectively determine the liability issue as to all potential class members by collateral estoppel upon a finding of liability, and stare decisis upon a finding of nonliability. The test case approach is neither appropriate nor superior here because, among other reasons, "defendants have not indicated that they would accede to such a procedure, a precondition of the *Katz [v. Carte Blanche Corp.]* test alternative." *Sommers v. Abraham Lincoln Federal Savings & Loan Association,* 66 F.R.D. 581, 592 n. 13 (E.D.Pa.1975).

igation was always possible whether or not [t]he[y] won on the merits of the case.

We are further of the opinion that the alternative methods of adjudication inevitably involve duplicative, expensive, and time consuming suits without any countervailing benefits. Conversely, the class action embodies an efficient and fair balance of the interests of the plaintiffs, the class members, and the defendants, all of whom will have their claims and the claims against them adjudicated in one lawsuit. *Ungar v. Dunkin' Donuts of America, supra* at 149–50. While such litigation presents some problems to counsel and the court, these burdens are not nearly as onerous to the judicial system as a series of extended suits against the defendants. *Id.* at 150.

The public at large likewise will benefit from a class action and expeditious adjudication of the issues involved, since class actions "reenforce the regulatory scheme by providing an additional deterrent beyond that afforded either by public enforcement or by single-party private enforcement." *Hackett v. General Host Corp.,* 455 F.2d 618, 623 (3d Cir.), *cert. denied,* 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972).

*Question 1—Do Individual Questions Predominate?*[8]

In their memoranda in opposition to plaintiffs' motion for class certification, defendants argued that class action certification under Rule 23 was improper because individual, as opposed to common, questions would predominate with respect to three essential elements of an antitrust action: (1) violation or conspiracy, (2) impact or fact of damage, and (3) amount of damage. Through Question 1, defendants continue to assert that individual issues will predominate. In Pretrial Order No. 13, we found that the asserted nationwide price fixing conspiracy presented questions of law and fact common to the class members which

predominate over any questions affecting only individual members. For the reasons more fully spelled out hereinafter, it is obvious why we made that finding.

With regard to the conspiracy issue, defendants argue that proof of conspiracy or illegal conduct cannot be accomplished by generalized means. In support thereof, they contend that the folding carton industry is not susceptible to an overall conspiracy or class treatment in light of the unique character of folding cartons with respect to their design, manufacture, and price. There are many reasons why this contention is unpersuasive. First, defendants' argument that the nature of the folding carton industry makes it impossible for there to be an overall conspiracy and for common issues to predominate has already been considered and rejected.

In *United States v. Container Corporation of America,* 393 U.S. 333, 336, 89 S.Ct. 510, 512, 21 L.Ed.2d 526 (1969), the Supreme Court rejected defendants' arguments that corrugated cartons varied "as to dimensions, weight, color, and so on" and therefore a conspiracy to fix prices of such "infinitely" different product units was impossible. The Court found that the reciprocal exchange of recent but past pricing information among competitors was concerted action in violation of Section 1 of the Sherman Act. Clearly, it is possible for there to be a conspiracy in the folding carton industry.

One of the most revealing rebuttals of defendants' position is Judge Thomas R. McMillen's statement during the government's abbreviated folding carton criminal trial against Consolidated Packaging Corporation and two individuals:

I am satisfied that the Government has a *prima facie* case of an *industry-wide, nationwide* conspiracy in the record. [*U. S. v. Alton Box Board Co.,* No. 76 CR 199

---

**8.** Question 1 reads as follows:

Whether class action certification under Rule 23(b)(3) is proper where plaintiffs' own complaint allegations, the criminal indictment on which they were premised, the government's theory in the criminal case, the evidence ad-

duced at the criminal trial, and defendants' extensive affidavits on the class action question, establish that proof of impact necessarily will involve a predominance of questions affecting only individual class members.

(N.D.Ill.) (Cr. Tr. 1628.)] (Emphasis supplied)

We are likewise unpersuaded by defendants' argument that the nature of the folding carton industry makes it impossible for common issues to predominate. First, contentions of infinite diversity of product, marketing practices, and pricing have been made in numerous cases and rejected. Courts have consistently found the conspiracy issue the overriding, predominant question. *See, e. g., State of Illinois v. Harper & Row Publishers, Inc.,* 301 F.Supp. 484 (N.D.Ill.1969). Second, we find unconvincing defendants' characterization of the folding carton industry. Rather as plaintiffs' portray the industry in their arguments, supporting documents, etc., it is apparently capable of close cooperation and concerted conduct. *See* plaintiffs' consolidated reply brief, especially pages 3–10, and plaintiffs' exhibits. Finally, even if the folding carton industry were as defendants have portrayed it, "[t]he highly individualized nature of work in the [folding carton] industry does not necessarily preclude the possibility of a common conspiracy among defendants to limit price competition among them." *Sun Garden Packing Co. v. Litton Business Systems, Inc.,* Docket 72 592 WTS 4 (N.D.Cal. June 4, 1976).

Defendants' argument that individual issues predominate with respect to impact, especially because of the nature of the folding carton industry, is misguided. Courts have consistently held that an illegal price fixing scheme presumptively impacts upon all purchasers of a price fixed product in a conspiratorially affected market. *See, e. g., In Re Master Key Antitrust Litigation,* 70 F.R.D. 23, 26 (D.Conn.), *appeal dismissed,* 528 F.2d 5, 11–12 (2d Cir. 1975); *In Re Ampicillin Antitrust Litigation,* 55 F.R.D. 269, 275–76 (D.D.C.1972). Contrary to defendants' position, a liability determination is not contingent upon a carton-by-carton analysis of every sale made under the alleged conspiracy to fix prices. Such an analysis, at best, goes to the damages to be awarded once liability has been demonstrated. In any event, as indicated earlier, even defendants' portrayal of the folding carton industry does not negate the common question of whether defendants conspired to fix prices.

Defendants maintain that plaintiffs' theory of generalized proof based upon across-the-board price increases is entitled to no weight since it is a newly contrived theory which was first mentioned in plaintiffs' consolidated reply brief. This argument is interesting but irrelevant. First, the complaints do allege a nationwide generalized conspiracy. Second, Rule 15, Fed.R.Civ.P., clearly allows for any necessary amendments. Third, even if defendants became aware of this theory for the first time in reading plaintiffs' reply brief, defendants were given an opportunity to file a sur-reply brief to respond to it.

Defendants further contend that plaintiffs' theory is, *inter alia,* inconsistent with evidence at the criminal trial and various documents. First, such suggestions do not raise a controlling question of law, as required by § 1292(b). At best, they raise a factual dispute which has already been resolved against defendants. Second, a private civil antitrust action need not track the criminal case which spawned it. Third, defendants' suggestions go more to the merits of the action than to whether plaintiffs have sustained their burden of proof on the motion for class certification. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Fourth, in any event, they ignore Judge McMillen's statement in the criminal trial of Consolidated Packaging that the Government had established "a prima facie case of an industry-wide, nationwide conspiracy."

Defendants contend that individual questions as to the amount of damages would be sufficient, by themselves, to preclude class treatment because of their predominance. This argument is clearly without merit and contrary to the authority of innumerable prior decisions.

Plaintiffs have stated that they intend to prove their claims and the claims of the class members by the generalized procedures approved by established case law, the

*Manual for Complex Litigation,* Section 1.43, and Rule 23. Assuming that liability is established at trial, they may well be able to do so, especially because the federal courts have consistently and firmly adhered to the principle that once liability has been demonstrated, complexity or uncertainty as to the amount of damages will not preclude recovery. *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946); *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931); *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684 (1927).

█ Even if the damage determinations have to be made on an individual basis, this should not militate against class certification. There are a number of procedures which are available to assist the court in the damage determination, including reference to a magistrate or master, creation of subclasses, etc.

### Question 3—Need for Prior Decision on Issue of Bifurcation?[9]

Defendants contend that the record in this case required that before a class action was certified the bifurcation issue, and the fair trial and Seventh Amendment questions inherent therein, should have been decided first. They submit that such a determination would necessarily have resulted in a denial of class certification. That is, defendants submit that there can be no manageable class action in this case without bifurcation and that bifurcation would violate their Seventh Amendment rights.

Defendants' belief that there can be no manageable class action in this case without

bifurcation is misguided. As indicated earlier, it is well settled that plaintiffs would be permitted wide latitude in proving the amount of damages, as opposed to the fact of damage. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 114 n.9, 123–24, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). Moreover, where individual damages are calculable by way of a standard formula, courts more readily discount individual differences in damages as a threat to manageability. At this time, it is simply not clear that bifurcation will be required.

█ However, assuming *arguendo* that it will be necessary, this court was not required to render a decision on the bifurcation issue and the constitutional questions raised therein before certifying a class. If anything, the contrary was mandated by the "case or controversy" requirement of Article III, Section 2 of the Constitution of the United States. It is Hornbook law that where, as here, issues—especially constitutional ones—are presented on a speculative basis, courts should refuse to rule on them.

In any event, defendants' reliance on *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931), presupposes that the damages issues are inextricably intertwined with the liability issue. Moreover, the courts of this circuit have found bifurcated trials constitutional, especially where the same jury tries both the issues of liability and damages unless the parties agree otherwise. *See, e. g., O'Donnell v. Watson Bros. Transportation Company,* 183 F.Supp. 577 (N.D.Ill. 1960) (the application of Rule 21 of the Civil Rules of the Northern District of Illinois, providing for separate trial on the issue of liability, violates no constitutional provi-

---

**9.** Question 3 states as follows:

Whether a determination in favor of a class action is proper *before* deciding the issue of bifurcation (a) where defendants established and plaintiffs virtually conceded that a class action trial would be unmanageable without some form of bifurcation, neither impact nor damages being susceptible to proof by some commonly applied formula; and (b) where:

(1) a bifurcated trial with "liability" (violation and impact) being tried separately from

damages and before different juries would violate defendants' Seventh Amendment right to trial by jury; and

(2) a bifurcated trial with violation being tried separately from impact and damages, in addition to its constitutional infirmity, would contravene the Clayton Act's statutory scheme by permitting private parties to establish a violation without proving any injury.

sion). *See also Hosie v. Chicago & North Western Railway Company,* 282 F.2d 639 (7th Cir. 1960), *cert. denied,* 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961) (the application of local Rule 21 does not violate the right of jury trial under the Seventh Amendment).[10]

### Question 5—Application of Rule 23 to Antitrust Damage Actions [11]

In their fifth alleged controlling question, defendants contend that Rule 23 cannot be validly applied to antitrust treble damage actions. As they argued in their class action briefs, defendants continue to assert that Rule 23(1) changes substantive law contrary to the authority of the Enabling Act, (2) is contrary to the "case or controversy" requirement, (3) multiplies the penalties prescribed by Congress, and (4) is so vague and ambiguous as to deny due process and equal protection of the law. Defendants further submit that the Supreme Court has never considered their arguments. Defendants' arguments are without merit.

The Supreme Court has applied Rule 23 with approval in a number of cases, including treble damage antitrust actions, and has made many observations about the rule. *See, e. g., American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Hawaii v. Standard Oil Co. of California,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972); *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Defendants' argument that the Supreme Court has never considered their argument is incorrect.

Rule 23 does not enlarge, abridge, or modify the substantive rules of law by which the litigant's rights are adjudicated.

The Rules Enabling Act, 28 U.S.C. § 2072, authorizes the promulgation of such procedural rules. In subsequent decisions, the Court stated that such rules constitute federal procedural law and not substantive law, and held that all lower courts are "instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). *See Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185 (1946); *Sibbach v. Wilson,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941).

Moreover, the 1966 amendments to Rule 23 did not change substantive law. The amended Rule has merely altered the procedure by which a class member announces his decision to be bound by the result of the litigation.

■ Defendants' argument that Rule 23 is contrary to Article III of the Constitution because there is no "case or controversy" between defendants and the "class" members is baseless. As defendants have noted, the "case or controversy" requirement is jurisdictional. As such, it could have been raised *sua sponte* by the Supreme Court in Rule 23 cases whether or not put in issue by a party. In fact, the defendants in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), and the American College of Trial Lawyers (as *amicus curiae*) raised the same argument on the constitutionality of Rule 23 before the Supreme Court. In ruling on the merits of the issues presented, the Court in *Eisen,*

10. In *Hosie,* the Court did not reach the issue of whether a party is deprived of a jury trial as contemplated by the Seventh Amendment when some of the issues are submitted to one jury and other issues to a second jury. 282 F.2d at 642. In *O'Donnell,* Judge Miner indicated that there are situations where the damage issue may be submitted to a second jury.

However, the preferred practice is to submit the damage issue to the same jury which decided the liability issue. 183 F.Supp. at 580–81.

11. Question 5 states as follows:
Whether Rule 23 can validly be applied to antitrust treble-damage actions under Section 4 of the Clayton Act?

*supra,* implicitly held that class actions satisfy the "case or controversy" requirement. Otherwise, the Court would have been compelled to hold that no class or subclass would be allowed.

Defendants' contention that a class action device cannot be available in an antitrust treble damage case because it amplifies the penalties prescribed by Congress is pure sophistry. Their reliance on *Kline v. Coldwell, Banker & Co.,* 508 F.2d 226 (9th Cir. 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975), is misplaced. The *Kline* court was not concerned with the question of the validity of Rule 23 because of its incorporation of penal provisions, but merely with the question of the superiority of the class action over individual treble damage actions. We have already found the class action superior to other available methods for the fair and efficient adjudication of the controversy here involved.

Defendants maintain that Rule 23 is also void for vagueness because trial courts have broad discretion in determining the permissibility of class actions. However, the mere fact that courts have discretion to make class action determinations does not warrant the conclusion that the class action device is inconsistent with due process and equal protection standards.[12]

On the contrary, Rule 23 grants courts broad discretionary powers to ensure a class

action defendant's constitutional rights. A trial court must evaluate a host of factors in determining whether there should be a class action. A rigid standard would only make this task more difficult and might well lead to injustice. Discretion enables a court to consider each case on its own facts.[13]

### Question 6—The Direct-Indirect Purchaser Problem [14]

In their motion for certification *nunc pro tunc,* defendants present their sixth alleged controlling question. They argue that certification of a class which includes direct wholesalers and indirect purchasers creates an antagonism and a conflict of interest among class members, especially since some or all of the indirect purchasers may not be able to prove passing on and therefore may not have provable claims against defendants under Section 4 of the Clayton Act. They further argue that there are difficult problems in identifying and notifying indirect purchasers and that no plaintiff is an adequate representative of either the wholesaler or the indirect purchaser group.

Subsequent to the briefing of defendant's motion for certification, the United States Supreme Court decided *Illinois Brick Company v. State of Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), which not only resolves Question 6, but also

---

**12.** Trial courts have been granted broad discretion in many areas involving constitutional rights. For example, the Seventh Amendment right to a jury trial has been held by the Supreme Court not to be denied because a trial court has broad discretion in granting a new trial or a judgment notwithstanding the verdict. *Galloway v. United States,* 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943).

**13.** Defendants argue that the trial of these actions on a class basis would inevitably lead to violation of their due process rights and denial of a fair trial because of the number of parties involved and the complexity and number of issues involved. The argument is without merit. Defendants rely on criminal cases, not civil cases. They overstate the complexity of the case. Finally, this court has ample devices available to it to ensure a fair trial to all concerned.

**14.** Question 6 states as follows:

Whether it is proper to certify a class which contains both first purchasers of folding cartons who are resellers (hereinafter "wholesalers"), and the customers of such wholesalers (hereinafter "indirect purchasers"), where some or all of the indirect purchasers may not be able to prove passing on and therefore may not have provable claims against defendants under Section 4 of the Clayton Act, the inclusion of both wholesalers and indirect purchasers therefore creates an inherent antagonism and conflict of interest among such class members with respect to these numerous individual issues of impact and damages, there is no adequate representative of either group before the Court, and there are extreme problems of identification of and notice to indirect purchasers?

requires us to amend, pursuant to Rule 23(c)(1), the definition of the class heretofore certified.[15] In *Illinois Brick,* the Court determined that § 4 of the Clayton Act affords a remedy only to persons who purchase directly from an alleged antitrust offender, thereby barring indirect purchasers from asserting pass-on claims under the *Hanover Shoe* [16] rule even though they may have been actually injured.

In light of *Illinois Brick,* Pretrial Order No. 13 must be amended. The new class definition, therefore, is as follows: [17]

> All persons in the United States (excluding Defendants, their subsidiaries, affiliates, or agents), who purchased folding cartons from any of the Defendants in these actions during the period from January 1, 1960 to December 31, 1974.

The new class certified disposes of the alleged problems raised in Question 6. First, there can be no conflict of interest on the issue of impact and damages between wholesalers and indirect purchasers since the class no longer includes indirect purchasers. Second, even assuming there would have been extreme problems of identification and notice when indirect purchasers were part of the class, such problems obviously no longer exist. Finally, defendants' argument that there is no adequate representative of wholesalers or indirect purchasers is mooted by the new class made in conformity with the standards enunciated in *Illinois Brick.*

Upon review of the materials submitted by the parties, we are satisfied that a substantial number of the plaintiffs who have sought class representative status are direct purchasers. To the extent that any active or reserve class representatives have made no direct purchases of folding cartons from any defendant during the period January 1, 1960 to December 31, 1974, Plaintiffs' Executive Committee and Coordinating Secretary shall file within seven days a list thereof withdrawing said plaintiffs as active or reserve class representatives.

## INTERLOCUTORY APPEAL WILL NOT MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION

Because we have determined that there is no controlling question of law as to which there is a substantial ground for difference of opinion, we need not reach the issue of whether an interlocutory appeal will materially advance the ultimate termination of the litigation. Nonetheless, we will briefly address the issue. We are of the opinion that defendants have failed to carry their burden of persuading the court that the litigation will be materially advanced.

Permission to take an interlocutory appeal should be granted sparingly and with discrimination. *Control Data Corp. v. International Business Machines Corp.,* 421 F.2d 323, 325 (8th Cir. 1970). The reason for this is well settled: there is a serious risk that piecemeal appeals will impede the efficacious administration of justice and unduly prolong the litigation, thereby burdening the parties and the court with unnecessary costs and delay. In fact, piecemeal appeals have been rejected even though there may be substantial differences of opinion concerning a controlling question of law. *McDaniel v. Baptist Memorial Hospital,* 352 F.Supp. 690, 696 (W.D.Tenn.), *aff'd,* 469 F.2d 230 (6th Cir. 1972).

This court's order certifying a class will not, if reversed on appeal, be "dispositive of the litigation" or "avoid protracted and expensive litigation." Judicial Conference

---

**15.** This court's decision to certify a class in which indirect purchasers were included was premised on the decision in the Court of Appeals for the Seventh Circuit [the decision below], *State of Illinois v. Ampress Brick Company, Inc.,* 536 F.2d 1163 (7th Cir. 1976), holding that indirect purchasers had standing to sue for damages under § 4 of the Clayton Act.

**16.** *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968).

**17.** The parties were advised of the new class definition and we heard the suggestions and comments of counsel for the parties in open court.

Committee Report on 28 U.S.C. § 1292, 3 U.S.Code Cong. & Admin.News, 85th Cong., 2d Sess., at 5260–61 (1958).[18] In view of the delays that may occur on appeal, immediate review of the decision to certify a class might well delay rather than materially advance the ultimate termination of this litigation.[19]

In sum, this case does not involve any novel, unprecedented or difficult questions. Moreover, defendants will not be prejudiced by a denial of their motion. If we have made an error in the decision to certify a class, we can further employ Rule 23(c)(1)— as we already have—to alter or amend the class. The class decision, judicial economy, and the interests of justice simply do not warrant § 1292(b) certification.

## CONCLUSION

For the reasons stated, it is therefore ordered that the motion of certain defendants to amend Pretrial Order No. 13, *nunc pro tunc,* by certifying same for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is denied.

It is further ordered that Pretrial Order No. 13 is amended to exclude indirect purchasers from the class definition.

It is further ordered that the new class definition is "All persons in the United States (excluding Defendants, their subsidiaries, affiliates, or agents), who purchased folding cartons from any of the Defendants in these actions during the period from January 1, 1960 to December 31, 1974."

It is further ordered that Plaintiffs' Executive Committee and Coordinating Secretary file within seven days a list withdrawing any active or reserve class representatives which have made no direct purchases of folding cartons from any defendant during the period January 1, 1960 to December 31, 1974.

---

18. The Judicial Conference Committee Report indicates that a mere question as to the correctness of a district court's ruling would be an inappropriate basis for granting § 1292(b) certification.

---

19. For example, in *Kamm v. California City Development Company,* 509 F.2d 205 (9th Cir. 1975), an interlocutory appeal was authorized in November of 1973 but affirmance of the decision below was not rendered until January 9, 1975.